**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| BALTIMORE-WASHINGTON CONSTRUCTION AND PUBLIC EMPLOYEES, LABORERS' DISTRICT COUNCIL DEFINED CONTRIBUTION RETIREMENT PLAN, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. WDQ-13-3474 |
| A-PINN CONTRACTING, LLC | * | |
| Defendant | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**REPORT AND RECOMMENDATIONS**

This Report and Recommendations addresses the Motion for Default Judgment (ECF No. 9, as supplemented by ECF Nos. 13, 15, 16) filed by the Plaintiffs, the Baltimore-Washington Construction and Public Employees, Laborers' District Council Defined Contribution Retirement Plan (the "Retirement Plan"); the Laborers' District Council Pension and Disability Trust Fund No. 2 (the "Pension Fund"); the Laborers' District Council Health and Welfare Trust Fund No. 2 (the "Welfare Fund"); the Laborers' Joint Training Fund of Washington, D.C. and Vicinity (the "Training Fund") (collectively the "Funds"); Justin Meighan, as trustee; and George Maloney, as trustee (collectively "Trustees") against the Defendant A-PINN Contracting, LLC ("Defendant"). The Defendant has not filed an opposition, and its deadline has now passed. Judge Quarles referred this case to me to review the Plaintiffs' Motion and to make recommendations concerning damages, pursuant to 28 U.S.C. § 636 and Local Rule 301.6. (ECF No. 11). I have reviewed the Plaintiffs' Motion and accompanying exhibits. (ECF Nos. 9, 13, 15, 16). No hearing is deemed necessary. Local Rule 105.6 (D. Md. 2014). For the reasons discussed

below, I respectfully recommend that the Plaintiffs' Motion (ECF No. 9, as supplemented by ECF Nos. 13, 15, 16) be GRANTED, and that damages be awarded as set forth herein.

## I.   BACKGROUND

The Plaintiffs in this action are four multiemployer plans, pursuant to the Employee Retirement Income Security Act ("ERISA"), *see* 29 U.S.C § 1002(37)(A), and two trustees of the plans.  Compl. ¶ 2.  The Defendant currently employs, and has employed, individuals who are represented by the Baltimore-Washington Construction and Public Employees, Laborers' District Council ("District Council").  Compl. ¶ 5.  On or about April 30, 2012, the Defendant entered into its most recent Collective Bargaining Agreement ("CBA") with District Council.  Pls.' Supplemental Mot. ¶ 1.  The CBA requires the Defendant to "contribute to and be bound by bona fide fringe benefit funds covering employees under this Agreement."  Pl.'s Supplemental Mot. Ex. 1.  The CBA sets the fringe rates to be paid by the Defendant to the Funds.  *Id.*

The CBA also binds the Defendant to the terms and conditions of several Declarations of Trust ("Trust Agreements").  Pls.' First Supplemental Mot. ¶ 2.  The Trust Agreements require the Defendant to submit monthly contribution payments and contribution reports, which identify the employees for whom payments have been made and the hours that the employees worked. *See* Pls.' First Supplemental Mot. Exs. 2–5.  The Trust Agreements state that if the employer fails to submit timely contributions and contribution reports to the Funds, liquidated damages will be assessed in an amount equal to the greater of $20 per delinquency or 15% of the amount of the contribution or contributions due.  *See* Pls.' First Supplemental Mot. Exs. 2–5; Pls.' Second Supplemental Mot. Ex. 2.[1]  The Trust Agreements further require the employer to permit

---

[1] The Trust Agreement for the Welfare Fund was amended effective January 1, 2002.  *See* Parenti Supplemental Decl. Ex. 2, ECF No. 15.  Pursuant to the amended Trust Agreement, upon the Defendant's failure to make timely contribution payments, the amount of damage presumed will be 15% of the amount of contribution or contributions due.  *Id.*  In addition, the Agreement states that interest will be assessed at

an auditor to enter the employer's premises to "examine and copy such books, records, papers, or reports of such employer as the Trustees, in their discretion, may determine to be necessary and pertinent to enable the Trustees to faithfully discharge their duties hereunder." Pls.' First Supplemental Mot. Exs. 2–5.  If the Board of Trustees files suit against the employer for a delinquency owed to the Funds, the Trust Agreements provide that the employer in default must pay "the auditing costs, incurred, if any, reasonable attorneys' fees, court costs, interest from the date of the delinquency, liquidated damages, and all other reasonable expenses incurred by the Board in connection with such suit or claim."  Pls.' First Supplemental Mot. Exs. 2–4.[2]

On November 19, 2013, the Trustees filed suit against the Defendant for the Defendant's failure to comply with the terms of the CBA and Trust Agreements.  Compl. ¶¶ 2, 6.  The Plaintiffs allege that despite their efforts to schedule an audit of the Defendant's records, the Defendant has not been cooperative.  Compl.  ¶¶ 9–13.  The Plaintiffs also allege that the Defendant has failed "to report its covered hours to the Fund and to make corresponding contributions to the Funds" since October, 2013.  Pls.' First Supplemental Mot. ¶ 4.  Finally, the Plaintiffs contend that the Defendant untimely submitted its contribution payment for the work month of October, 2012, resulting in an assessment of $8.00, including $4.75 in liquidated damages and $3.25 in interest.  Pls.' First Supplemental Mot. ¶ 5.  The Plaintiffs seek the

---

a rate of 10% per year, beginning the day immediately following the date on which the contributions became delinquent, or any later date that the Board of Trustees may establish, and continuing until the delinquency is satisfied.  *Id.*

[2] The Trust Agreements for the Retirement Plan, Pension Fund, and Welfare Fund share nearly identical provisions pertaining to the power of the Board of Trustees to enforce individual employer payments. The analogous provision in the Trust Agreement of the Training Fund is worded differently.  It provides that if the Board files suit, "any individual employer will permit a certified public accountant selected by the authority of the Board to enter upon the premises of such individual employer…to examine and copy such books, records, paper or reports of such individual employer as the Trustees, in their discretion, may determine to be necessary and pertinent to enable the Trustees to faithfully discharge their duties hereunder." Pls.' Supplemental Mot. Ex. 5.

auditor's costs of attempting to conduct the audit, which amount to $1,201.25.  *See* Murray Decl., Ex. A.  The Plaintiffs also seek attorneys' fees and costs in the amount of $7,898.00 and injunctive relief.  Siegel Decl. ¶¶ 6–13, ECF No. 13; Siegel Supplemental Decl. ¶¶ 4–5, ECF No. 16.

## II.    STANDARD FOR DEFAULT JUDGMENT

In reviewing the Plaintiffs' Motion for Entry of Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability.  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001).  It, however, remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action.  *Id.*; *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages.  *Ryan*, 253 F.3d at 780-81.  The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.  *See, e.g.*, *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999).  In so doing, the court may conduct an evidentiary hearing.  Fed. R. Civ. P. 55(b)(2).  The court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award.  *See, e.g.*, *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum); *see also Trs. of the Nat'l Asbestos Workers Pension*

4

*Fund v. Ideal Insulation Inc.*, Civil No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested."); *Pentech Fin. Servs. Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment where plaintiff submitted affidavits and electronic records establishing the amount of damages sought); *JTH Tax, Inc. v. Smith*, No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

In addition to damages, the court may order injunctive relief. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Libmak Co., LLC*, ELH-12-1125, 2012 WL 5383313, at *5 (D. Md. Oct. 31, 2012). "[W]here [a] defendant is in default and where the applicable statute provides for injunctive relief as a possible remedy, the court may issue an injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction, which include a showing of irreparable harm should the injunction not be granted." *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 349 (E.D.N.Y. 2009).

In sum, (1) the court must determine whether the unchallenged facts in Plaintiffs' Complaint constitute a legitimate cause of action, and, if they do, (2) the court must make an independent determination regarding the appropriate amount of damages and the appropriate injunctive relief.

III.   **DISCUSSION**

    **A.  Defendant's Liability**

The Plaintiffs have brought this suit pursuant to § 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185.   § 301 of the LMRA provides in relevant part that:

> [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. 185(a).  "Employee benefit trust funds and fund trustees have standing to sue under section 185(a) as third-party beneficiaries of a collective bargaining agreement."  *Int'l Painters & Allied Trade Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 686 (D. Md. 2013).   As Trustees to the Funds, Justin Meighan and George Maloney have standing to sue.

Plaintiffs also bring suit pursuant to §§ 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA").   Sections 502 and 515 of ERISA govern the enforcement of employer contributions to employee pension and welfare trust funds.  *See* 29 U.S.C. §§ 1132(g), 1145; *Trs. of Glaziers Local 963 Pension, Welfare, and Apprentice Funds v. Walker & Laberge Co., Inc.*, 619 F. Supp. 1402, 1403 (D. Md. 1985).   Section 515 requires employers who are obligated to make contribution payments to a multiemployer plan or collectively bargained agreement to "make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  Where the plan prevails in an action to enforce § 1145, § 502(g) requires courts to award the plan unpaid contributions, interest on the unpaid contributions, liquidated damages, attorney's fees, and other legal or equitable relief as the court

deems appropriate.  *See* 29 U.S.C. § 1132(g)(2).  Taking the well pled factual allegations in the Complaint as true, the Plaintiffs have established that the Defendant was a party to the CBA and is in breach of the CBA and Trust Agreements by virtue of its failure to comply with the terms and conditions governing employer contributions to the Funds.  Accordingly, the Plaintiffs have asserted a valid cause of action and are entitled to damages pursuant to § 502(g).  On that basis, I recommend that the Plaintiffs' Motion for Entry of Default Judgment be granted.

### B.  Damages

ERISA permits Plaintiffs to recover unpaid contributions, interest on the unpaid contributions, liquidated damages of up to twenty percent of the amount of the unpaid contributions, reasonable attorneys' fees and costs, and other legal or equitable relief as the court deems appropriate.  29 U.S.C. § 1132(g)(2)(A)-(E).  The Defendant has not made any contribution payments or contribution reports since October, 2013.  However, the Plaintiffs cannot ascertain the full amount of damages owed arising from the Defendant's non-compliance because the Defendant has failed to submit the required contribution reports, which document the hours worked by employees, and the Defendant has not permitted an audit of its records.  The only definitive damages that the Plaintiffs assert at this time are: (1) damages arising from the untimely submission of the October, 2012 contribution payment; (2) the auditor's costs; and (3) attorneys' fees.  Each category of damages is addressed in turn.

### 1. Liquidated Damages and Interest for the Defendant's Untimely October, 2012 Contribution Payment

The Declaration of Renee Parenti, Plan Administrator to the Retirement Plan, Pension Fund, and Welfare Fund, provides that the Defendant untimely submitted its contribution payment for the work month of October, 2012.  Parenti Supplemental Decl. ¶¶ 2–3.  The

payment was due no later than November 30, 2012, but the Plaintiffs did not receive payment until December 31, 2012. *Id.* The Plaintiffs seek an award of $8.00 to the Welfare Fund, consisting of $4.75 in liquidated damages and $3.25 in interest for the untimely contribution payment. *Id.* at ¶ 8. The Third Amendment to the Trust Agreement for the Welfare Fund expressly allows the Plaintiffs to assess 15% of the contribution amount due, as liquidated damages, and interest at 10%. *See* Parenti Supplemental Decl. Ex. 2. I have reviewed the supplemental evidence submitted by the Plaintiffs, and I find that their calculations are correct. Accordingly, I recommend that the Court award the Plaintiffs $8.00 in liquidated damages and interest.

### 2. Audit Costs

The Trust Agreements and a Delinquency Procedure and Audit Policy Statement establish that the employer will be required to pay the audit costs in the event that the employer does not comply with an audit. *See* Pls.' First Supplemental Mot. Exs. 2–5, 7. The Declaration of John Patrick Murray, auditor to the Funds, demonstrates that the Funds incurred $1,201.25 for Mr. Murray's attempts to conduct an audit of Defendant's records. I have reviewed the declaration and attached billing summaries and recommend that the Court award the Plaintiffs $1,201.25 in audit costs to date.

### 3. Attorneys' Fees and Costs

The Plaintiffs claim a total of $7,898.00 in attorneys' fees and costs. Specifically, the Plaintiffs request $7,268.00 in fees, reflecting a total of 18.4 hours of billed time. Siegel Decl. ¶¶ 6–13, ECF No. 13; Siegel Supplemental Decl. ¶¶ 4–5, ECF No. 16. The Plaintiffs also request a total of $630.00 in costs for the civil filing fee ($400.00) and the private process server fees ($230.00). Siegel Decl. ¶¶ 13–15, ECF No. 13. The costs are reasonable charges for out-of-

pocket expenses incurred by attorneys in the representation of their clients, and I recommend that they be awarded.

In calculating the appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted). A trial court may exercise its discretion in determining the lodestar amount because it possesses " 'superior understanding of the litigation,' " and the matter is " 'essentially' " factual. *Thompson v. HUD*, MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir. 1986)). Once the lodestar amount has been determined, the Court determines a reasonable fee by assessing whether the hours worked were reasonable or whether the request includes hours that were unnecessary or duplicative. In evaluating both the lodestar calculations and the overall reasonable fee, this Court uses "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc*., 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (*citing Johnson*, 488 F.2d at 717-19).

Counsel for the Plaintiffs, Richard S. Siegel, Esq., has been admitted to practice for approximately six years, and bills at an hourly rate of $395.00.  *See* Siegel Supplemental Decl. ¶¶ 3–4.  This Court's Guidelines for Determining Attorneys' Fees in Certain Cases provides that lawyers admitted to the bar between five and eight years may reasonably bill from $165.00 to $300.00.  Local Rule App'x B (3) (D. Md. 2014).  These Guidelines are not definitive; they are "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees."  Local Rule App'x B n.6 (D. Md. 2014).  Mr. Siegel notes that although his billing rate exceeds the guidelines, his rate has been approved in previous cases in this district. *See* Pls.' Second Supplemental Mot. ¶¶ 11–12.  Those cases are not binding on my decision. Moreover, this Court has ordered the Plaintiffs to supplement their motion twice, because of a lack of supporting evidence.  I find it inappropriate to award Mr. Siegel fees at a rate commensurate with attorneys admitted to practice for fifteen years, particularly when the initial motion was lacking in evidentiary support, and the supplemental motion omitted material information.  *See* ECF Nos. 12, 14.  I recommend that Mr. Siegel's rate be reduced to $300.00, the maximum presumptively reasonable rate for a lawyer with his experience.  Accordingly, I recommend an award of attorney's fees in the amount of $5,520.00 for 18.4 hours worked.

### C.   Injunctive Relief

The Plaintiffs also request that the Court order the defendant to: (1) submit all outstanding contribution reports; and (2) fully comply with the Funds' payroll audit.  Compl. ¶¶ 15–20; Pls.' Mot., ECF No. 9.  ERISA expressly allows courts to order "equitable relief."  29 U.S.C. § 1132(g)(2)(E).  Such relief may include an injunction ordering the defendant to submit outstanding contribution reports, or an injunction ordering the defendant to submit to an audit.

*See Nat'l Elec. Benefit Fund v. AC-DC Elec., Inc.*, DKC-11-0893, 2011 WL 6153022, at *2 (D. Md. Dec. 9, 2011); *Int'l Painters and Allied Trades Industry Pension Fund*, 2012 WL 5383313, at *10.  The Defendant has failed to submit any contribution reports to the Funds for any work performed by employees since October, 2013.  Pls.' Mot. ¶ 6, ECF No. 9.  I find it appropriate to order the Defendant to submit all outstanding contribution reports with all required information, including the names of employees and the hours worked, within thirty (30) days of the date of the Court's order.

I similarly find it appropriate to order the Defendant to submit to an audit of its payroll records.  "An injunction requiring Defendant to submit to an audit is warranted as long as the Fund establishes the prerequisites for an injunction—irreparable harm and the absence of an adequate legal remedy."  *Nat'l Elec. Benefit Fund*, 2011 WL 6143022, at *3.  The Plaintiffs need not expressly assert that there is no adequate remedy at law, or that irreparable harm will result, as long as "the record clearly reflects that those elements are present."  *Trs. of the Nat'l Automatic Sprinkler Indus. Welfare Fund, et al. v. Westland Fire Prot., Inc., et al.*, DKC-12-1421, 2012 WL 6478726, at *3 (D. Md. Dec. 4, 2012) (granting injunctive relief based on evidence showing that if no audit were permitted, plaintiffs would be precluded from collecting amounts owed, and would have no means of ensuring compliance with the CBA and Trust Agreements); *La Barbera*, 666 F. Supp. 2d at 350 (finding sufficient evidence satisfying requirements for entry of an injunction where defendant had defaulted and refused to submit to an audit).  The Plaintiffs have established that the Defendant has not permitted a full audit of its payroll records.  Absent an injunction, the Plaintiffs cannot determine whether the Defendant is in compliance with the CBA and Trust Agreements, or whether the Defendant owes any money to the Funds.  *See* Pls.' Compl. ¶ 15.  Accordingly, I recommend that the Court order the

Defendant to submit to an audit of its records within thirty (30) days of the date of this Court's order.  I further recommend that, within thirty (30) days of the audit, the Plaintiffs be ordered to submit a report to the Court indicating whether the Plaintiffs: (1) intend to request further damages arising from any audit, including any delinquent contributions, interest, liquidated damages, audit costs, and attorneys' fees; or (2) do not intend to request damages because the audit revealed no delinquency, the Defendant satisfied the delinquency, or for any other reason.  If the Plaintiffs request additional damages post-audit, I recommend that the Court re-refer the case to me to consider the request.  Should the Plaintiffs determine that no further request for damages is necessary, I recommend that this case be closed.

**Conclusion**

For the reasons set forth above, I recommend that:

1.      the Court GRANT the Plaintiffs' Motion for Entry of Default Judgment (ECF No. 9, as supplemented by ECF Nos. 13, 15, 16);

2.      the Court award the Plaintiffs $1,201.25 in audit costs.  I also recommend an award of $5,520.00 in attorneys' fees and $630.00 in costs;

3.      the Court order the Defendant to submit all outstanding contribution reports to the Funds within thirty (30) days of the Court's order;

4.      the Court order the Defendant to submit to an audit of its payroll records within thirty (30) days of the Court's order;

5.      the Court order the Plaintiffs to submit a report identifying whether the Plaintiffs intend to seek any post-audit damages, within thirty (30) days of the audit; and

6.      the Court award the Plaintiffs post-judgment interest at the statutory rate.

I direct the Clerk to mail a copy of this Report and Recommendations to the Defendant at the address listed on the Plaintiffs' Complaint (ECF No. 1).

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated:  July 21, 2014                                    /s/
                                             Stephanie A. Gallagher
                                             United States Magistrate Judge